HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RONALD C. MORRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, in her capacity as Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | CASE NO. C13-1767RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on the Report and Recommendation ("R&R") (Dkt. # 19) of the Honorable John L. Weinberg, United States Magistrate Judge, along with the Commissioner's objection (Dkt. # 22) to the R&R. The court has considered the R&R, the objection, Plaintiff's response to the objection, the briefs the parties submitted to Judge Weinberg, and the Administrative Record ("AR"). For the reasons stated below, the court ADOPTS the R&R, DENIES the Commissioner's objection, REVERSES the July 27, 2012 decision of the administrative law judge, and REMANDS this action to the Social Security Administration ("SSA") with instructions to award disability benefits based on a disability onset date of August 26, 2010.

ORDER – 1

## II. BACKGROUND

No one disputes that Plaintiff Ronald Morris has physical and mental conditions that limit his ability to work.  He has chronic foot pain as the result of past surgeries, carpal tunnel syndrome in his left hand, and asthma.  He also suffers from depression and anxiety, the latter of which is linked at least in part to post-traumatic stress disorder.

Mr. Morris is no shut-in.  He takes care of himself, engages to varying degrees with relatives who live in Western Washington, volunteers at a local food bank, and attempts to exercise.  Still, he is physically limited by his foot (which he contends makes him incapable of performing ambulatory work without frequent rest breaks), by his hand (which makes him unable to grasp objects well), and by his asthma (which requires him to use his inhaler on a daily basis).

Every treating and examining medical provider who has evaluated Mr. Morris's ability to work has contended that he would be substantially limited.  A few non-examining providers have reviewed his medical records and reached other conclusions.

Mr. Morris's most recent application for disability benefits, which claims a disability onset date of August 26, 2010, came before an administrative law judge ("ALJ") for a July 2012 hearing, which resulted in the ALJ's written decision later that month.  The ALJ acknowledged virtually all of Mr. Morris's limitations, but ultimately settled upon a residual functional capacity ("RFC") determination that concluded that Mr. Morris's mental-health-related impairments would not impact his ability to work other than by limiting him to "no more than incidental contact with the general public." AR 28.  The vocational expert who testified at the hearing concluded that although Mr. Morris could not perform his past work with that RFC, he could perform jobs which exist in significant numbers in the local and national economy.  The ALJ accepted that conclusion, and ruled that Mr. Morris was not disabled.

Mr. Morris appealed.  The R&R, which focuses almost exclusively on the limitations associated with Mr. Morris's mental health, concluded that the ALJ lacked a

ORDER – 2

sufficient basis to reject the views of several of the physicians, mental health practitioners, and other medical providers who treated or examined Mr. Morris. It concluded that the ALJ did not have clear and convincing evidence to discredit Mr. Morris's testimony about the severity of his symptoms. Finally, it recommended that the court remand for an award of benefits.

The Commissioner objected to the R&R, contending that the ALJ made no error warranting reversal, much less an error warranting a remand for the purpose of awarding benefits.

## III.  ANALYSIS

### A.  Standard of Review

Where "substantial evidence" supports an ALJ's factual finding, the court generally must affirm it. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1222 (9th Cir. 2009) ("Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). In certain circumstances, such as when an ALJ rejects a claimant's testimony about the severity of her impairments, a higher standard applies. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (requiring "specific, cogent reasons" for rejecting claimant's testimony, and "clear and convincing evidence" where there is no evidence of malingering). Similarly, an ALJ can reject the uncontradicted opinions of a treating or examining medical provider only where clear and convincing evidence supports that decision. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even where medical evidence contradicts the opinion of a treating or examining provider, the "ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The court does not defer to the ALJ's legal conclusions. *Bray*, 554 F.3d at 1222. The court reviews a magistrate judge's R&R de novo. Fed. R. Civ. P. 72(b)(3).

ORDER – 3

A five-step process determines whether an applicant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). An applicant is disabled if, for a period of sufficient duration, she can perform neither her past relevant work nor any other work available in the national economy. In the first step, the applicant must show that she did not engage in substantial gainful activity during a relevant time period. If she did, then she is not disabled. If she did not, then the claimant must show at the second step that she has a "severe impairment" that limits her ability to work. 20 C.F.R. § 404.1520(c). If so, she must show at the third step that over the course of at least a year, her impairment "meets or equals" an impairment listed in applicable regulations. If it does, she is disabled. If not, the ALJ must determine, between step three and step four, the applicant's RFC, which is an assessment of the applicant's "ability to work after accounting for her verifiable impairments." *Bray*, 554 F.3d at 1222-23. The applicant must demonstrate at step four that her RFC is such that she cannot perform her past relevant work. *See* 20 C.F.R. § 404.1520(f) (noting that an applicant who can perform past relevant work is not disabled). If she cannot, then the burden shifts to the SSA to demonstrate that her RFC permits her to perform other jobs that exist in substantial numbers in the national economy. *See Bray*, 554 F.3d at 1223 (describing allocation of burdens in five-step process).

In this case, the dispute arises at steps four and five. Mr. Morris asserts that the evidence establishes an RFC more restrictive than the one that the ALJ developed, and that RFC does not permit him to work.

**B.     The Record Does Not Provide A Sufficient Basis to Reject Evidence that Mr. Morris Was Disabled.**

The parties do not identify a dispute material to the outcome of this appeal as to the limitations associated with Mr. Morris's physical condition (including his foot and hand problems and his asthma). Like the R&R, the court focuses on whether the ALJ properly assessed the effect of Mr. Morris's mental health on his RFC.

ORDER – 4

The following evidence points to the conclusion that Mr. Morris has an RFC more limited than the one the ALJ adopted.

1) Dr. Wayne Dees, a psychologist, examined Mr. Morris and concluded that he would "have difficulty with more complex tasks due to his mental health issues," that the same issues made it "unlikely that he would be able to work in a consistent and competitive manner or show up for work on time," and that "[d]epression, anxiety, low self-esteem and mood instability would likely impair his ability to interact with others and maintain a consistent work schedule." AR 423.

2) Two providers from the same mental health practice, nurse practitioner Noel Howes, MN, ARNP, and mental health case manager and psychotherapist Scott Meihn, LMHC, treated Mr. Morris from at least September 2010 to the time of the hearing before the ALJ. Mr. Howes twice provided mental health evaluations for the Washington Department of Social and Health Services. In a January 2011 evaluation, he found that Mr. Morris would have "severe" restrictions on his ability to work in any job involving contact with the public, and "severe" difficulties maintaining appropriate behavior in any work setting. AR 432. He also noted that nightmares (and the poor sleep associated with them) as well as "unpredictable" anxiety symptoms leading to absenteeism would have a "marked" impact on Mr. Morris' ability to work. AR 430. In an evaluation in December 2011, he noted that "[p]oor sleep and flashbacks and general hypervigil[a]nce during the day affect his ability to be consistent at work." AR 426.

3) Mr. Morris testified to anxiety attacks that caused him to "hyperventilate," and disable him from any activity for 10 to 15 minutes, and that those attacks would occur a little more frequently than every two weeks. AR 46-47. He testified to needing to be alone and able to do "breathing exercises" at least

ORDER – 5

three times a week, or he would "actually go crazy." AR 49-50. He testified that he was dependent on regular counseling to keep calm. AR 50-51. He testified that he had a "tendency to forget things a lot," including difficulties keeping scheduled appointments, as well as difficulties staying focused. AR 48.

There is other evidence pointing to the conclusion that limitations associated with Mr. Morris's mental health would prevent him from working a regular 40-hour workweek. Of particular interest is a June 2012 letter from the woman who supervised Mr. Morris in his volunteer work at a local food bank. AR 329. She observed that Mr. Morris's "health concerns" frequently prevented him from meeting his goal of volunteering once a week. *Id.* She believed he was not "capable of working in a competitive employment setting . . . ." *Id.* Both the ALJ's decision and the R&R summarize much of the other evidence supporting the conclusion that Mr. Morris cannot work. The court does not discuss it here, however, because the evidence cited above is (as the court will soon discuss) a sufficient basis to reverse the ALJ's decision and award benefits.

There is also, to be sure, evidence that supports a conclusion that Mr. Morris's mental health was not disabling. The R&R declares that "[*a*]*ll* medical evidence points to the clear conclusion that Plaintiff's mental impairments prevent him from working." R&R at 3 (emphasis in original). That overstates the record. There is much evidence in the record that is at least potentially inconsistent with the notion that Mr. Morris cannot work, and much of that evidence comes from the notes of Mr. Morris's medical providers. There are, moreover, evaluations from two non-examining mental health providers (Dr. John Gilbert and Dr. Michael Regets) who believed (at least in mid-2011) that Mr. Morris could work full-time despite his mental health. As a matter of law, however, none of that evidence suffices to overcome the opinions of the examining and

ORDER – 6

treating medical providers cited above, nor is it sufficient to overcome Mr. Morris's testimony.

As to Mr. Morris's testimony, the ALJ could reject it only with clear and convincing evidence. *Greger*, 464 F.3d at 972 (requiring "specific, cogent reasons" for rejecting claimant's testimony, and "clear and convincing evidence" where there is no evidence of malingering). There is no evidence in the record that Mr. Morris is a malingerer, and the ALJ did not conclude otherwise. The ALJ instead pointed to evidence taken from Mr. Morris's testimony, the treatment notes of Mr. Howes and Mr. Meihn, and other sources, establishing that Mr. Morris was able to perform many tasks that were consistent with an ability to work. He managed his own cooking and household chores; he attended a form of job training; he made many of his counseling appointments; he visited family occasionally; and he volunteered at the food bank. The ALJ also pointed to evidence from the same sources establishing that there were days and longer periods where Mr. Morris was not disabled by his anxiety, depression, or other mental ailments. None of that evidence, however, is inconsistent with Mr. Morris's testimony. He did not testify that he was bedridden or incapable of any social functioning, he testified that he did not believe he would be able to work consistently. Nothing in the record undermines that conclusion. Putting aside the evidence the court cited above, the record contains many descriptions of disabling anxiety attacks, shorter periods of anxiety that would disrupt an ordinary work day, and other symptoms that would make Mr. Morris unable to work consistently. It is error to use evidence of periods of normal functioning as a basis to reject testimony that a claimant does not *consistently* have normal functioning. *Garrison*, 759 F.3d at 1018.

The ALJ asked the vocational expert to assume that Mr. Morris had "average ability to perform sustained work activities," including the ability to "maintain attention and concentration and persistence and pace in an ordinary work setting on a regular and continuing basis, eight hours a day, five days a week, or an equivalent work schedule

ORDER – 7

within customary tolerances of employers' rules regarding sick leave and absences." AR 58.  With those assumptions (and others pertaining to the limitations associated with Mr. Morris's physical problems), the vocational expert identified jobs available in significant numbers that Mr. Morris could perform.  But when asked how much absenteeism employers would typically tolerate, the vocational expert testified that no jobs would be available if the employee were typically absent more than a half day per month.  AR 61-62.  In short, if the ALJ had credited Mr. Morris's testimony, he would have been compelled to conclude that Mr. Morris was disabled.  And, for the reasons stated above, there was no clear and convincing evidence permitting the rejection of Mr. Morris's testimony.

The same pattern repeats with respect to Dr. Dees' conclusions.  If the ALJ could point to a medical opinion that contradicted Dr. Dees' opinion, he could disregard Mr. Dees' opinion by providing "specific and legitimate reasons" and supporting them with "substantial evidence."  *Garrison*, 759 F.3d at 1012.  Without a contrary medical opinion, the ALJ needed clear and convincing evidence to reject Dr. Dees' opinion.  *Lester*, 81 F.3d at 830.  The ALJ's order cites no contrary medical opinion.  In objecting to the R&R, the Commissioner pointed to Dr. Gilbert's and Dr. Regets' evaluations.  AR 135-36, 138-39, 163-164.  These non-examining physicians concluded that Mr. Morris could work consistently (although even they acknowledged that his ability to work uninterrupted was impaired).  The ALJ did not cite either of their opinions.  Because they predate Dr. Dees' evaluation, they do not directly contradict it.  Nonetheless, nothing in those evaluations provides "substantial evidence" sufficient to reject the opinion of a medical provider who actually examined Mr. Morris.  As to the remainder of the record, the ALJ again relies on evidence (including evidence from Dr. Dees' evaluation of Mr. Morris) pointing out that Mr. Morris had many periods of normal functioning.  The ALJ concluded, without citing any medical provider, that Dr. Dees' opinions about Mr. Morris's ability to work were inconsistent with his observation that Mr. Morris was

ORDER – 8

"friendly and cooperative" during his examination, had no suicidal thoughts, was articulate, and showed an ability to use logic and follow simple instructions. Dr. Dees plainly did not share that opinion, and without medical evidence to contradict it, the ALJ had no basis to dispute the conclusions Dr. Dees drew from the evaluation he performed. The ALJ again points to Mr. Morris's frequent ability to function within normal limits as a sufficient basis to reject Dr. Dees' opinion that he could not work a full workweek. For reasons the court has already stated, that is an insufficient basis, as a matter of law, to reject Dr. Dees' opinion.

Finally, the court considers the ALJ's treatment of the opinions of Mr. Howes and Mr. Meihn. Because they are not "[l]icensed or certified psychologists," 20 C.F.R. § 404.1513(a)(2)," they are "[o]ther sources" of medical evidence, 20 C.F.R. § 404.1513(d). The ALJ could discount their testimony merely by pointing to "germane" reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). It is from the notes of Mr. Howes and Mr. Meihn that the ALJ obtained much of the evidence he cited to demonstrate Mr. Morris's ability to function within normal limits. But where the same notes reflect the anxiety attacks and limited mental functioning that would make Mr. Morris incapable of consistently working a regular workweek, it does not suffice to merely point to evidence of periods of normal functioning. Mr. Meihn and Mr. Howes were in a better position than the ALJ to decide, considering both Mr. Morris's periods of normal functioning and periods in which his mental health incapacitated him, whether he could sustain a normal workweek.

**C.     Crediting Improperly Rejected Evidence as True, It Is Appropriate To Remand for an Award of Benefits.**

Where an ALJ lacks a sufficient basis to reject either medical evidence or testimony from a disability claimant, the court may credit that testimony as true. *Garrison*, 759 F.3d at 1020. Where the record is fully developed, and the improperly rejected or discounted testimony establishes that the claimant is disabled, the court has

ORDER – 9

discretion to remand for an award of benefits rather than for a new hearing before an ALJ. *Id.* at 1020.[1]

In this case, the court concludes that the record is fully developed (no one contends otherwise), that it is appropriate to credit as true Mr. Morris's testimony and the opinions of Dr. Dees and Mr. Howes and Mr. Meihn, and that evidence establishes that Mr. Morris cannot perform jobs that exist in significant numbers. A remand for an award of benefits, as the R&R recommends, is appropriate.

## IV. CONCLUSION

For the reasons stated above, the court ADOPTS the R&R (Dkt. # 19), DENIES the Commissioner's objection (Dkt. # 22), REVERSES the July 27, 2012 decision of the administrative law judge, and REMANDS this action to the SSA with instructions to award disability benefits retroactive to August 26, 2010.

The clerk shall enter judgment for Mr. Morris and ensure that Judge Weinberg receives notice of this order.

DATED this 12th day of December, 2014.

*/s/ Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

---

[1] The Commissioner argues that Ninth Circuit precedent establishing the credit-as-true rule (as well as precedent requiring clear and convincing evidence to reject certain evidence) is inconsistent with the Social Security Act. The Commissioner acknowledges that this court is compelled to follow Ninth Circuit precedent, and the court suggests no view on the merits of the Commissioner's disagreement with that precedent.

ORDER – 10